BAKER v STATE TAX COMMISSION

BAKER v CITY OF ANN ARBOR

Docket No. 54610. Argued December 10, 1974 (Calendar No. 1).— Decided November 25, 1975. Rehearing denied 395 Mich 923.

St. Joseph Mercy Hospital is a nonprofit corporation with facilities located in the City of Ann Arbor, exempt from real property tax. The city assessor included the office space used by 33 doctors including D. E. Baker, M. D., on the city's 1971 real property assessment rolls. The assessor found that the doctors' use of the office space was in connection with a business for profit and thus taxable under MCLA 211.181; MSA 7.7(5). The doctors appealed the assessments, and the board of review and the State Tax Commission affirmed. The Court of Appeals, Lesinski, C. J., and J. H. Gillis and McGregor, JJ., reversed (Docket No. 12985). Defendants City of Ann Arbor and State Tax Commission appeal. *Held:*

1. Whether the arrangement benefits or advances the essential functioning of the hospital is irrelevant. The question is whether or not the doctors are carrying on a business for profit, and if they are, under the terms of the statute they are subject to tax for the use of otherwise exempt property.

2. The private practice of medicine is the carrying on of a business for profit under the taxing statute.

Reversed.

43 Mich App 513; 204 NW2d 538 (1972) reversed.

1. TAXATION—REAL PROPERTY TAX—EXEMPT PROPERTY—BUSINESS FOR PROFIT—PHYSICIANS AND SURGEONS.

Office space in an otherwise tax-exempt hospital used by doctors for the private practice of medicine is subject to real property tax where the doctors are carrying on a business for profit in the office space (MCL 211.181; MSA 7.7[5]).

REFERENCES FOR POINTS IN HEADNOTES
[1] 71 Am Jur 2d, State and Local Taxation § 383.
[2] 61 Am Jur 2d, Physician, Surgeons, and Other Healers § 8.

2. TAXATION—PHYSICIANS AND SURGEONS—BUSINESS FOR PROFIT.

　The private practice of medicine is the carrying on of a business for profit under the taxing statute (MCL 211.181; MSA 7.7[5]).

*Dykema, Gossett, Spencer, Goodnow & Trigg* (by *Marshall M. Massey* and *Bettye S. Elkins),* for plaintiffs.

*R. Bruce Laidlaw,* Chief Assistant City Attorney, for defendant City of Ann Arbor.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Richard R. Roesch,* Assistant Attorney General for defendant Michigan State Tax Commission.

PER CURIAM. This is an appeal from the Court of Appeals which reversed the decision of the Michigan State Tax Commission approving the assessment of tax under MCLA 211.181; MSA 7.7(5) by the City of Ann Arbor.

We reverse the decision of the Court of Appeals and affirm the assessment by the State Tax Commission.

The pertinent facts giving rise to the controversy are stipulated:

"1. The physicians assessed determine the fees they will charge and bill their patients directly. St. Joseph Mercy Hospital (the Hospital) does not regulate the amount charged by the physicians assessed or by any other physician who practices in the Hospital and bills his patients directly.

"2. The Hospital maintains complete control over who uses office space in the Hospital and charged the physicians no rent. Since the institution of this litigation, two of the plaintiff doctors have been required by the Hospital to vacate their office space.

"3. Many of the physicians assessed make contribu-

tions to the Hospital. These contributions for the years 1970, 1971 and 1972 are indicated on Exhibit A attached to the Third Affidavit of August Janovits.

"4. The registration procedure and use of outpatients' hospital medical records is as described in the Third Affidavit of August Janovits.

"5. The current administrative and committee assignments of the physicians assessed are as listed on Exhibit D of the Third Affidavit of August Janovits.

"6. All of the physicians assessed derive part of the income attributable to their medical practices from treating patient in the offices they use in the Hospital. The most substantial part is 100% of annual medical income. The least is 3%, and the average percentage is about 32.4%. Those physicians in the lowest percentage categories are specialists whose practice requires the use of Hospital-provided facilities, including for example, the operating room and cardiac catheterization unit. Staff physicians who do not have offices in the Hospital also use these specialized facilities, such as the operating room and various laboratories, and special care units. The patient receives only one bill for the entire procedure, which includes related office examinations. Only in the infrequent case where the specialized procedure is not indicated would a separate bill for use of office facilities be issued.

"7. The Hospital does not pay any of the physicians for any of the teaching, committee or administrative work they do for the Hospital, or for staffing the outpatient department."

MCLA 211.181; MSA 7.7(5) provides in pertinent part:

"When any real property which for any reason is exempt from taxation is leased, loaned or otherwise made available to and used by a private individual, association or corporation in connection with a business conducted for profit, * * * the lessees or users thereof shall be subject to taxation in the same amount and to the same extent as though the lessee or user were the owner of such property. * * * "

In explaining their decision the Court of Appeals said:

"A review of the facts in the instant case clearly reveals that any profit that the doctors may have received was merely incidental to their function of furthering the purposes of the hospital. It is obvious that a hospital needs a certain number of doctors physically present in order to treat its patients, teach its interns, and serve on medical committees. The fact that the doctors may make a profit on treating hospital patients is not sufficient to make them subject to the real property tax imposed by the Commission.

The State Tax Commission concluded that the doctors were carrying on a business for profit and therefore subject to the tax. We now hold, as a matter of law, that where the profit is incidental to the essential functioning of the exempt organization, the exemption must stand and the tax on the incidental profit must fall."

Such reasoning misses the question in issue.

We are not concerned with whether the arrangement benefits or advances the essential functioning of the hospital.

We look only to whether or not the doctors are carrying on a business for profit. If they are, under the terms of the statute they are subject to tax for the use of otherwise exempt property in connection therewith.

We are satisfied that the private practice of medicine is the carrying on of a business for profit under the taxing statute.

Reversed, no costs, a public question.

T. G. KAVANAGH, C. J., and WILLIAMS, LEVIN, and FITZGERALD, JJ., concurred.

COLEMAN and LINDEMER, JJ., took no part in the decision of this case.